473 A.2d 438

**Chegeru KAWAMURA**

v.

**STATE of Maryland et al.**

**No. 84, Sept. Term, 1982.**

Court of Appeals of Maryland.

April 9, 1984.

Edward L. Genn, Rockville (Gilbert J. Genn, Rockville, on brief), for appellant.

Susan K. Gauvey, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellees.

Argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and W. ALBERT MEN-CHINE, retired, Specially Assigned Judge.

ELDRIDGE, Judge.

This case involves a challenge to the constitutionality of Maryland Code (1974, 1984 Repl.Vol.), § 4–302(d)(2)(ii) of the Courts and Judicial Proceedings Article, which limits a criminal defendant's right to be tried by a jury under certain circumstances.[1] Section 4–302(d)(2)(i) entitles a criminal

---

1. Section 4–302(d) provides as follows:

"(d) *Jury trial.*—(1) The District Court is deprived of jurisdiction if a defendant is entitled to and demands a jury trial at any time prior to trial in the District Court.

(2)(i) Except as provided in subparagraph (ii) of this paragraph, unless the penalty for the offense with which the defendant is charged permits imprisonment for a period in excess of 90 days, a defendant is not entitled to a jury trial in a criminal case. · (ii) Notwithstanding the provisions of subparagraph (i) of this paragraph, the presiding judge of the District Court may deny a defendant a jury trial if:

defendant in the District Court to a jury trial in any case where the maximum authorized penalty for the offense with which he is charged is imprisonment for greater than ninety days. Once a defendant in such case prays a jury trial, the District Court is deprived of jurisdiction, and jurisdiction is vested in the appropriate circuit court so that a jury trial may proceed. By § 4–302(d)(2)(ii), however, the prosecutor and District Court judge may act together to deny a defendant a jury trial in a case where the maximum authorized penalty for the offense exceeds ninety days. If the prosecutor recommends that the judge not impose a term of imprisonment for more than ninety days, and if the judge so agrees, the defendant is not entitled to a jury trial and the case remains in the District Court to be tried without a jury. It is the validity of applying this procedure in the present case, under both the federal and state constitutions, that Mr. Kawamura contests here.

The relevant facts are as follows. On September 3, 1981, Chegeru Kawamura was charged in the District Court of Maryland, sitting in Montgomery County, with the theft of goods having a value of under $300.00. Under Code (1957, 1982 Repl. Vol.), Art. 27, § 342(f)(2), this offense is a misdemeanor punishable by imprisonment for a period not to exceed eighteen months and/or a fine not to exceed $500.00. On October 6, 1981, Kawamura prayed a jury trial. The State then recommended, and the trial judge agreed to be bound by the recommendation, that Kawamura receive a prison sentence of not longer than ninety days should he be found guilty of theft. Thus, pursuant to § 4–302(d)(2)(ii), the judge denied Kawamura's jury trial request.

---

1. The prosecutor recommends in open court that the judge not impose a penalty of imprisonment for a period in excess of 90 days, regardless of the permissible statutory or common law maximum;
2. The judge agrees not to impose a penalty of imprisonment for a period in excess of 90 days; and
3. The judge agrees not to increase the defendant's bond if an appeal is noted.
(iii) The State may not demand a jury trial."

As a result of this ruling, Kawamura asked the District Court to declare that § 4–302(d)(2)(ii) violated his right to a jury trial under both the federal and state constitutions. On December 15, 1981, the District Court judge ruled that she could "not find that the Statute is violative of any federal constitutional rights, nor . . . that it violates the state constitution," and she ordered that the case be set for trial without a jury at the earliest possible date. Three days later Kawamura filed a motion for reconsideration, again requesting that § 4–302(d)(2)(ii) be declared unconstitutional, and that proceedings in the District Court be stayed pending disposition of an appropriate appeal. The District Court denied Kawamura's motion for reconsideration and request for a stay on January 8, 1982.

Meanwhile, prior to the District Court's January 8th ruling, and because of apparent concern that the issues would become moot once the trial commenced in the District Court, Kawamura filed two separate original petitions in the Circuit Court for Montgomery County. In both petitions Kawamura requested that § 4–302(d)(2)(ii) be declared unconstitutional and that further proceedings in the District Court be enjoined pending resolution of the constitutional issues.[2] The circuit court judge was of the view that Kawamura's claims amounted to a collateral attack on interlocutory decisions of the District Court, and the judge concluded that the circuit court lacked jurisdiction to entertain the petitions. Consequently, on February 23, 1982, the circuit court dismissed both petitions, and Kawamura filed timely appeals to the Court of Special Appeals.

On February 26, 1982, which was forty-nine days after the District Court's January 8th order and three days after the circuit court's denial of his petitions, Kawamura filed an

---

2. Kawamura was apparently uncertain of the proper procedures for obtaining the requested relief. Accordingly, on December 22, 1981, he filed in the Circuit Court for Montgomery County one petition in equity and one miscellaneous petition, both of which requested the identical declaratory and injunctive relief.

appeal from the District Court's failure to grant a jury trial and to declare § 4–302(d)(2)(ii) unconstitutional. This appeal was dismissed by the District Court, and Kawamura failed to take an appeal from the District Court's order of dismissal.[3]

Thereafter, on March 4, 1982, Kawamura filed a third petition in the circuit court requesting a writ of certiorari under the K Rules for the purpose of reviewing the District Court's decisions denying a jury trial. Upon concluding that the issues raised by Kawamura's certiorari petition had been fully raised and argued in the prior equity and miscellaneous petitions, the circuit court denied the petition for a writ of certiorari. Kawamura again filed a timely appeal to the Court of Special Appeals.

By order of March 19, 1982, the Court of Special Appeals consolidated the three appeals filed by Kawamura, and stayed the District Court criminal proceedings pending disposition of the appeals. Prior to any further proceedings in the Court of Special Appeals, however, we granted Kawamura's petition for a writ of certiorari and also stayed the District Court criminal proceedings.

I.

The first question we must address is whether the merits of Kawamura's constitutional challenge to § 4–302(d)(2)(ii) were properly presented to the circuit court for decision, and consequently are before this Court for review.

---

3. Pursuant to Maryland Rule 1313, the District Court may dismiss an appeal where it is not timely filed, where required costs are not paid, or where, because of the appellant's actions, the record is not transmitted to the appellate court in a timely fashion. In this case, the grounds for dismissal of Kawamura's appeal are not reflected in the District Court record. The District Court may have dismissed the appeal on timeliness grounds. Nevertheless, we need not explore the matter because of Kawamura's failure to appeal from the District Court's dismissal.

We believe that the constitutional issues are properly before us.[4]

Preliminarily, we note that the question of the appealability of the District Court's decisions denying a jury trial was not before the circuit court and is not before us, as Kawamura failed to appeal from the District Court order dismissing his appeal.[5]

---

**4.** Both sides have proceeded on the assumption that the merits of Kawamura's jury trial contentions should have been decided by the circuit court and are before this Court. The State concedes that the certiorari petition in the circuit court was an appropriate vehicle for review of the District Court's denial of a jury trial. But, as we have reiterated, jurisdiction cannot be conferred by consent of the parties, and we will consider the issue sua sponte. *See, e.g., Anthony Plumbing of Md. v. Atty. Gen.,* 298 Md. 11, 15–16, 467 A.2d 504 (1983); *Highfield Water Co. v. Wash. Co. San.,* 295 Md. 410, 414, 456 A.2d 371 (1983); *East v. Gilchrist,* 293 Md. 453, 458, 445 A.2d 343 (1982). This principle extends to a question of the trial court's jurisdiction or authority. *Duffy v. Conaway,* 295 Md. 242, 254, 455 A.2d 955 (1983), and cases there cited.

**5.** There appears to be conflicting authority in this Court as to whether the denial of a jury trial may be appealed prior to a final judgment in the case. *Compare Condon v. Gore,* 89 Md. 230, 234, 42 A. 900 (1899) (holding that an immediate appeal lies from denial of a jury trial) *with Ex Parte Johnson,* 215 Md. 391, 394–395, 138 A.2d 347 (1958) (rejecting an immediate appeal from denial of a jury trial).

Subsequent to those cases, this Court adopted the so-called "collateral order doctrine," permitting appeals from certain interlocutory decisions which conclusively determine an important question, are separate from the merits of the case, and are effectively unreviewable on appeal from a final judgment. *See Mann v. State's Atty. for Montgomery County,* 298 Md. 160, 164–165, 468 A.2d 124 (1983); *Sigma Reproductive Health Center v. State,* 297 Md. 660, 666–671, 467 A.2d 483 (1983); *Clark v. Elza,* 286 Md. 208, 212–213, 406 A.2d 922 (1979); *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 91–97, 394 A.2d 801, 5 A.L.R. 4th 1238 (1978); *Stewart v. State,* 282 Md. 557, 571, 386 A.2d 1206 (1978); *Jolley v. State,* 282 Md. 353, 357, 384 A.2d 91 (1978). The District Court rulings in this case might well have been appealable under the collateral order doctrine. The orders conclusively determined that Kawamura was not entitled to and would not receive a jury trial at the first tier of his criminal proceedings. Moreover, the issue, involving an accused's constitutional right to a jury trial, is clearly an important one. Whether Kawamura had a right to be tried by a jury at the first instance is a question which would seem to be distinct from the merits of the criminal prosecution. Finally, if not appealable until the conclusion of the District Court trial, Kawamura's claim that he is entitled initially to a jury

Nevertheless, Kawamura's contention that § 4–302(d)(2)(ii) unconstitutionally deprived him of his right to a jury trial was appropriately raised in the circuit court pursuant to its original jurisdiction to issue a writ of certiorari. In our view, it was error for the circuit court to deny Kawamura's certiorari petition.

■ It has long been the common law rule in Maryland that a circuit court has jurisdiction to issue a writ of certiorari to a lower court for the purpose of inquiring into that tribunal's jurisdiction. *Thistlewood v. Ocean City*, 236 Md. 548, 550, 204 A.2d 688 (1964); *State v. Jacob*, 234 Md. 452, 457–458, 199 A.2d 803 (1964); *State v. Stafford*, 160 Md. 385, 389, 391, 153 A. 77 (1931). *See Baum v. Warden of Jail*, 110 Md. 579, 583, 73 A. 294 (1909); *Gaither v. Watkins*, 66 Md. 576, 580–581, 8 A. 464 (1887); 2 J. Poe, *Pleading and Practice* §§ 722–723A (Tiffany's ed. 1925). In such instance, a writ of certiorari may properly issue notwithstanding the availability of a direct appeal. As early as 1887, this Court in *Gaither v. Watkins, supra,* rejected the argument that whenever an appeal is available, certiorari is improper, stating (66 Md. at 580–581, 8 A. 464, emphasis added):

> "[I]t was argued, that a *certiorari* ought not to issue in any case where a party has a remedy by appeal or by writ of error. We are not prepared to go to this extent. This much, however, we may say, that as it is a matter resting in the legal discretion of the court, the writ ought not to be granted in any case, where the party has a right of appeal, *except for the purpose of testing the jurisdiction of the tribunal below. . . . "*

*See also A.S. Abell Co. v. Sweeney*, 274 Md. 715, 719, 337 A.2d 77 (1975); *Ruth v. Durendo*, 166 Md. 83, 86, 170 A. 582 (1934); *Roth v. State*, 89 Md. 524, 526–527, 43 A. 769 (1899);

---

trial, without first going through a separate non-jury trial in the District Court, would effectively be lost. As pointed out above, however, the matter of appealability is not before us, and a decision concerning the appealability of a District Court order denying a jury trial must await another day.

*Weed v. Lewis,* 80 Md. 126, 127–128, 30 A. 610 (1894): *Judefind v. State,* 78 Md. 510, 512, 28 A. 405 (1894).

The Maryland K Rules, effective January 1, 1962, were intended to implement the existing common law practice regarding certiorari in the circuit court. Accordingly, in cases brought under those rules, this Court has approved of certiorari in the circuit court as the appropriate means for that court to review trial magistrate proceedings based on an allegedly unconstitutional ordinance, *Thistlewood v. Ocean City, supra,* and to review a trial magistrate's power to grant probation without verdict, *State v. Jacob, supra. See also State v. Stafford, supra* (certiorari is the proper means to review the power of a justice of the peace to try a criminal case without affording the accused a right to elect a jury trial).

When the District Court replaced the existing courts of limited jurisdiction in this State, nothing in the original implementing statute or in later amendments modified the common law remedy of certiorari in the circuit court to test the jurisdiction of the lower court.[6] Liebmann, in his treatise on the Maryland District Court, summarized the law as follows (1 Maryland Practice—District Court Law and Practice at § 91):

> "The enactment of the District Court Act would not appear to alter the established principle that where a court is of limited jurisdiction there must be affirmative proof in support of substantial compliance with jurisdictional requirements. . . . It would appear that the jurisdiction of the District Court may be tested by certiorari from the Circuit Court which will issue the writ only when it is alleged and appears prima facie that the inferior tribunal is without jurisdiction."

---

**6.** The Maryland District Court was first created by constitutional amendment and legislative enactment in 1970. For a summary of the historical background and origins of the District Court in Maryland, *see* G. Liebmann, 1 Maryland Practice—District Court Law and Practice §§ 1–20 (1976).

■ In the case at bar, Kawamura sought a writ of certiorari in order for the circuit court to examine the District Court's denial of a jury trial. This question directly related to the subject matter jurisdiction of the District Court. Section 4–302(d)(1) of the Courts and Judicial Proceedings Article of the Code expressly deprives the District Court of jurisdiction over a criminal cause where the defendant is entitled to and requests a jury trial. Subsections 2(i) and 2(ii) define when a defendant is entitled to a jury trial. Subsection 2(i) provides that the right to a jury trial lies where the potential penalty for the offense charged may be imprisonment for a period greater than ninety days. Subsection 2(ii), the constitutionality of which is at issue in this case, contains an exception to subsection 2(i) in the situation where both the prosecutor and judge agree that the defendant will not be sentenced to a prison term in excess of ninety days. Where, as here, the offense charged carries a maximum statutory penalty of eighteen months imprisonment,[7] Kawamura is entitled to demand a jury trial and the District Court automatically loses jurisdiction of his criminal case upon that demand, unless the provisions of subsection 2(ii) are invoked. If, as Kawamura alleges, the application of subsection 2(ii) to this case was unconstitutional, his jury trial demand deprived the District Court of jurisdiction.

Consequently, the circuit court erred in refusing to decide, upon Kawamura's petition for a writ of certiorari, whether the District Court had jurisdiction to try this criminal case after the demand for a jury trial.[8]

---

7. *See* Code (1957, 1982 Repl. Vol.), Art. 27, § 342(f)(2).

8. Since we are of the view that certiorari was the proper procedural mechanism for raising the jury trial issue, we need not decide whether the circuit court erroneously dismissed Kawamura's petitions for declaratory and injunctive relief. As to declaratory relief, *see Grimm v. Comm'rs of Wash. Co.,* 252 Md. 626, 632–639, 250 A.2d 866 (1969). With regard to injunctive relief, *see Waam, Inc. v. Ober,* 199 Md. 203, 205–206, 86 A.2d 399 (1952). *See also Doe v. Comdr., Wheaton Police Dep't.,* 273 Md. 262, 273–274, 329 A.2d 35 (1974); *Niner v. Hanson,* 217 Md. 298, 308, 142 A.2d 798 (1958).

## II.

In our opinion, § 4–302(d)(2)(ii) is invalid as applied to one charged with theft under Art. 27, § 342(f)(2), or petty larceny as the offense was known prior to 1978.[9] Section 4–302(d)(2)(ii) denied Kawamura his right to a jury trial under the Maryland Constitution.[10] Because we determine that § 4–302(d)(2)(ii) was invalidly applied in light of the state constitution, we need not consider whether there was also a violation of Kawamura's right to a jury trial under the Sixth and Fourteenth Amendments to the federal constitution.

The State offers two arguments to support its position that § 4–302(d)(2)(ii) did not deprive Kawamura of his state constitutional right to a jury trial. The State first contends that, because application of § 4–302(d)(2)(ii) imposes a ninety-day limit on incarceration, all crimes subject to District Court jurisdiction and § 4–302(d)(2)(ii) are "petty" offenses and may be tried without a jury. Second, the State argues that even if there were a jury trial right for the crime of

---

9. Art. 27, § 341, provides that the crime of "theft in this subheading constitutes a single crime embracing, among others, the separate crimes heretofore known as larceny ... [etc.]."

10. Article 5 of the Maryland Declaration of Rights provides:
 "That the Inhabitants of Maryland are entitled to ... trial by jury...."
 Article 21 of the Declaration of Rights provides:
 "That in all criminal prosecutions, every man hath a right ... to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."
 Article 23 of the Declaration of Rights provides:
 "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction.
 "The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five hundred dollars, shall be inviolably preserved."
 Article 24 of the Declaration of Rights provides:
 "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges ... or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

theft under $300, that right is fully satisfied by affording Kawamura a jury trial in a de novo circuit court appeal after trial and conviction in the District Court.[11] The State conceded at oral argument that its position would require that we overrule *Danner v. State,* 89 Md. 220, 42 A. 965 (1899).

The first case in this Court to address the constitutional permissibility of trying a criminal defendant before a court of limited jurisdiction, without a right to a jury trial in the first instance, was *State v. Glenn,* 54 Md. 572 (1880). That case concerned, *inter alia,* the constitutionality of Ch. 415, § 10, of the Acts of 1878, which conferred jurisdiction upon justices of the peace to try persons charged with being vagrant and habitually disorderly.[12] Upon conviction, the statute authorized the justice of the peace to sentence the defendant to a maximum of six months in the House of Correction.[13] It also provided for a right of appeal to the circuit court, where there would be a right to a jury trial.

---

11. Sections 12–401(d) and (e) provide:

"(d) *De novo and on record appeals.*—In a civil case in which the amount in controversy exceeds $1,000 exclusive of interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract, and in any case in which the parties so agree, an appeal shall be heard on the record made in the District Court. In every other case, including a criminal case in which sentence has been imposed or suspended following a plea of nolo contendere or guilty, and an appeal in a municipal infraction or Code violation case, an appeal shall be tried de novo.

(e) *Right to jury trial.*—In a criminal appeal that is tried de novo, there is no right to a jury trial unless the offense charged is subject to a penalty of imprisonment or unless there is a constitutional right to a jury trial for that offense."

For a discussion of the common law right to trial by jury in the circuit court, *see Thompson v. State,* 278 Md. 41, 48–53, 359 A.2d 203 (1976). *See also Hardy v. State,* 279 Md. 489, 492, 369 A.2d 1043 (1977).

12. The same statute also created the "Board of Managers of the Maryland House of Correction."

13. The present maximum incarceration for the offense is confinement "in jail" for a period not exceeding sixty days. Code (1957, 1982 Repl. Vol., 1983 Cum.Supp.), Art. 27, § 123.

The defendant Glenn was convicted under the statute by a justice of the peace in Baltimore City and sentenced to six months in the House of Correction. Glenn did not appeal; instead she filed an application with a Baltimore County circuit judge for a writ of habeas corpus. The circuit judge issued the writ and discharged the defendant on the ground that the statute was unconstitutional under the provisions of the Maryland Declaration of Rights guaranteeing the right to a jury trial in criminal cases. This Court, in an opinion by Judge Alvey, reversed, concluding that the statute did not violate the state constitutional right to trial by jury. 54 Md. at 606.

The Court in *Glenn* held that, despite the broad language of several Declaration of Rights sections,[14] jurisdiction could be conferred upon a justice of the peace to try, without a jury, certain minor offenses. The Court first pointed out that in England "it has been the constant course of legislation . . ., for centuries past, to confer summary jurisdiction upon justices of the peace for the trial and conviction of parties for minor and statutory police offenses," and that "[w]ork-houses and Houses of Correction, principally occupied by parties convicted by justices of the peace, have been maintained, certainly from the days of Queen Elizabeth," 54 Md. at 600. Judge Alvey went on to observe that the Maryland Legislature, both in the colonial period and after the revolution, had enacted statutes conferring jurisdiction upon justices of the peace to try certain types of offenses. *Id.* at 602–604. The Court reasoned that the framers of the Declaration of Rights "were well acquainted with the history of [such] legislation" and that "it is difficult to suppose that, by any provision incorporated in [the Declaration of Rights] . . ., it was intended to nullify previous legislation [and] altogether interdict the use of a long and well-estab-

---

14. The Court (54 Md. at 599–600) set forth the four sections quoted in footnote 10, *supra.* Specifically with regard to the right to a jury trial, Article 21 refers to "*all* criminal prosecutions" and Article 23 to "the trial of *all* criminal cases." (Emphasis added.)

lished summary jurisdiction...." *Id.* at 604–605. The Court stated that the provisions of the Declaration of Rights guaranteeing the right to a jury trial in criminal cases refer "to such crimes and accusations as have, by the regular course of the law and the established modes of procedure, as theretofore practiced, been the subjects of jury trial," and generally do not encompass those offenses which historically had been covered by statutes conferring summary jurisdiction upon justices of the peace. *Id.* at 606. The Court concluded that, under this standard, the State had the "power to provide by law for the summary trial and conviction of vagrant and disorderly persons by justices of the peace." *Ibid.*

Nineteen years later in *Danner v. State, supra,* this Court generally reaffirmed the *Glenn* holding, although it narrowed the class of criminal cases where a jury trial in the first instance could constitutionally be denied. *Danner* involved a provision of Ch. 128 of the Acts of 1896 which conferred jurisdiction upon justices of the peace to try, without a jury, "all cases of petty larceny, when the value of the property stolen does not exceed the sum of five dollars...." The statute authorized a defendant, who was brought before the justice of the peace, to pray a jury trial, in which event it was the duty of the justice to commit the defendant for trial in the circuit court. The statute also provided for a de novo appeal to the circuit court, with the right to a jury trial, from a final judgment of conviction by a justice of the peace. In *Danner* the defendant was charged with stealing corn having the value of one dollar. He was convicted of petty larceny by a justice of the peace and sentenced to thirty days in the county jail. At the time, petty larceny was punishable by a maximum of eighteen months imprisonment either in the penitentiary or the county jail. Code (1888), Art. 27, § 157. On Danner's appeal to the circuit court, it had been held that he had waived his right to pray a jury trial. On further appeal to this Court, the conviction was reversed. This Court held that, under the Maryland Declaration of Rights, one charged with petty

larceny is entitled to a jury trial in the first instance, that this constitutional right is not satisfied by a jury trial upon appeal, and that Danner had not waived his right to a jury trial.

In its *Danner* opinion, this Court reviewed *State v. Glenn, supra,* and concluded that, in light of *Glenn,* "[i]t is clear that [a jury trial] cannot be demanded in many minor offences. These could always be reached by summary proceedings." 89 Md. at 226, 42 A. 965. The Court then added: "but it is difficult to define with precision the class of cases that could be so tried." *Ibid.* The *Danner* opinion acknowledged that "by the common law of England and in some of the States of the United States petit larceny, though a felony,[15] was regarded as a minor offence not punishable by an infamous penalty; and was therefore not to be classified with . . . infamous crimes when the right of the accused to a jury trial was being considered." *Id.* at 224, 42 A. 965. Consequently, under the *Glenn* test standing alone, it was arguable that the right to a jury trial should not attach to petty larceny. Nevertheless, the Court in *Danner* held that the state constitutional right to a jury trial generally attaches to any offense for which an infamous punishment could be imposed, and that confinement in the penitentiary was an infamous punishment (*id.* at 226, 42 A. 965):

> "It may, however, be stated as a general rule that for any criminal offense for which a person is liable to infamous punishment, a trial by jury cannot be denied him. . . . It cannot be questioned that confinement in the penitentiary is an infamous punishment."

Finally, the Court in *Danner* turned to the argument that the defendant's right to a jury trial is satisfied by the entitlement to a jury trial on appeal to the circuit court. The Court indicated that there may be some offenses where the constitutional right to a jury trial attached but was

---

**15.** As previously mentioned, Art. 27, § 342(f)(2), now categorizes theft under $300 as a misdemeanor.

satisfied by a jury trial on appeal, saying (89 Md. at 226, 42 A. 965):

> "There is a class of cases in which it is held that when an appeal is allowed from the inferior tribunal to a Court where the party may obtain a jury trial, the constitutional safeguards have not been encroached upon. But the cases cited to sustain this position are . . . prosecutions for minor offenses."

The Court went on to state that "[t]he right of parties charged with . . . infamous crimes is more extensive than in . . . prosecutions for misdemeanors of minor importance," *id.* at 227, 42 A. 965. After reviewing several other authorities, the Court quoted with approval from *Callan v. Wilson,* 127 U.S. 540, 557, 8 S.Ct. 1301, 1307, 32 L.Ed. 223 (1888), that " '[t]he guarantee of an impartial jury to the accused . . . secures to him the right to enjoy that mode of trial from the first moment, and in whatever Court he is put on trial.' " *Id.* 89 Md. at 228, 42 A. 965.[16]

Glenn and *Danner,* therefore, establish that the right to a jury trial guaranteed by the Maryland Declaration of Rights does not attach, at least at the initial trial level, to certain minor criminal offenses, although this class cannot be precisely defined. Nevertheless the state constitutional jury trial right does attach in the first instance to offenses which historically had been tried before juries. It also attaches to any infamous offense or any offense subject to infamous punishment.[17] Moreover, as the facts of *Danner*

---

**16.** The *Callan* case was principally concerned with the jury trial provision of Article III of the United States Constitution, which is not applicable to state prosecutions. While the Court in *Danner* quoted from *Callan,* the Supreme Court's decision in that case was not the principal basis for the holding in *Danner.* It is noteworthy, however, that in a recent opinion the Supreme Court declined "to disturb the holding in *Callan.* . . . " *Ludwig v. Massachusetts,* 427 U.S. 618, 629, 96 S.Ct. 2781, 2787, 49 L.Ed.2d 732 (1976).

**17.** The *Danner* court used the phrases "infamous crime" and "infamous punishment" interchangeably for purposes of the jury trial right. For a case suggesting that there is a difference between the

show, to the extent that the length of incarceration or the place of incarceration is relevant in determining whether the state constitutional right to a jury is applicable at the initial criminal trial level, it is the maximum sentence and place of incarceration established by the legislature for the particular offense which controls, and not the maximum sentence or place of incarceration decided by the court in a particular case.[18]

The *Glenn* and *Danner* cases, and the above-summarized principles established by those cases, have been subsequently reaffirmed and applied by this Court on several occasions. In *Baum v. Warden of Jail, supra,* 110 Md. 579, the Court held that, under the Maryland Constitution and the holdings in *Glenn* and *Danner,* a justice of the peace in Baltimore City had no jurisdiction to try one charged with assault and battery unless the defendant waived his right to a jury trial at the initial level. While under the pertinent local statute the offense was not punishable by confinement in the penitentiary and was not a felony, the Court, after reviewing the *Danner* holdings, stated with regard to assault: "It is certainly of a more serious character than vagrancy or habitually disorderly conduct." 110 Md. at 585. As the Court in *Baum* found that the defendant had not waived his constitutional right to a jury trial, it affirmed the order of the Court

---

two for some purposes, *see Hall v. State,* 22 Md.App. 240, 244 n. 5, 323 A.2d 435 (1974).

**18.** With regard to the length of sentence, this is the same principle applied in cases concerned with the jury trial right under the Sixth and Fourteenth Amendments, although for purposes of the federal constitutional right the maximum authorized sentence is virtually the only consideration in determining whether the jury trial right attaches. *See, e.g., Ludwig v. Massachusetts, supra,* 427 U.S. at 624–625, 96 S.Ct. at 2785; *Codispoti v. Pennsylvania,* 418 U.S. 506, 511–512, 94 S.Ct. 2687, 2690–2691, 41 L.Ed.2d 912 (1974); *Baldwin v. New York,* 399 U.S. 66, 68–69, 90 S.Ct. 1886, 1887–1888, 26 L.Ed.2d 437 (1970). One exception is criminal contempt, where the actual sentence, rather than the maximum authorized for the offense, determines whether a defendant has a federal constitutional right to a jury trial. *Codispoti v. Pennsylvania, supra,* 418 U.S. at 511–512, 94 S.Ct. at 2690–2691; *Wilkins v. State,* 293 Md. 335, 444 A.2d 445 (1982).

of Common Pleas which, upon a writ of certiorari, had directed the defendant's release. *See also Lancaster v. State,* 90 Md. 211, 215, 44 A. 1039 (1899) (similar to *Baum,* but there the defendant had waived her right to a jury trial at the initial level); *Green v. State,* 113 Md. 451, 457–458, 77 A. 677 (1910) (discussion of *Baum,* with intimation that jury trial right attaches to criminal libel).

On the other hand, in *Crichton v. State,* 115 Md. 423, 81 A. 36 (1911), the Court held that, under the principles set forth in *Glenn* and *Danner,* there was no state constitutional right to a jury trial at the first instance when the defendant was charged with violations of the motor vehicle laws relating to speeding, "especially when the right of appeal is given to Courts where jury trials can be had, as is done by this statute," 115 Md. at 427, 81 A. 36.[19] *See also Dougherty v. Superintendent,* 144 Md. 204, 124 A. 870 (1923) (holding that there was no constitutional right to a jury trial at the initial tier when the defendant was charged with violating a section of the motor vehicle laws making it a misdemeanor, punishable by a maximum of five years imprisonment, for one to operate or occupy a motor vehicle if he knew or had reason to believe that it was stolen); *Norwood v. Wiseman,* 141 Md. 696, 119 A. 688 (1922) (no constitutional right to a jury trial for one accused of selling intoxicating liquor without a license, in violation of a municipal ordinance); *State v. Loden,* 117 Md. 373, 384–387, 83 A. 564 (1912) (constitutional right to a jury trial does not attach to the offense of operating a moving picture machine without a license); *State v. Ward,* 95 Md. 118, 51 A. 848 (1902) (no right to a jury trial for one charged with violating a local law regulating the shooting of wild fowl).

Later, in *State v. Stafford, supra,* 160 Md. 385, 153 A. 77, the Court, relying on *Baum* and *Danner,* again held that the state constitutional right to a jury trial attached, at the initial trial level, to the offense of assault and battery. In

---

**19.** The offenses involved in *Crichton* were punishable by a fine only. *See* Ch. 207 of the Acts of 1910.

that case a justice of the peace convicted the defendant of assault and battery and sentenced him to the House of Correction for nine months. The defendant applied to the circuit court for a writ of certiorari, but the court quashed the writ. This Court reversed, holding that certiorari was an appropriate method of challenging the jurisdiction of the justice of the peace, despite the availability of an appeal. The Court further held that the justice of the peace lacked jurisdiction, as the record failed to show that the defendant had waived his state constitutional right to a jury trial.

The principles set forth in *Glenn, Danner, Baum,* and the other cases discussed above, have never been questioned by this Court. On the contrary, those cases have been regularly cited as viable. *See, e.g., Thompson v. State,* 278 Md. 41, 52–53, 359 A.2d 203 (1976); *In re Johnson,* 254 Md. 517, 521, 255 A.2d 419 (1969), *appeal dismissed,* 403 U.S. 926, 91 S.Ct. 2257, 29 L.Ed.2d 706 (1971); *Schowgurow v. State,* 240 Md. 121, 125–126, 213 A.2d 475 (1965); *Smith v. State,* 210 Md. 440, 443–447, 124 A.2d 839 (1956); *Callan v. State,* 156 Md. 459, 464, 144 A. 350 (1929); *Smith v. State,* 17 Md.App. 217, 221–225, 301 A.2d 54, *cert. denied,* 269 Md. 766 (1973). The construction of the state constitutional provisions guaranteeing the right to a jury trial in criminal cases, which is set forth in *Glenn, Danner* and *Baum,* has become embedded in our state constitutional law. The State has not demonstrated that the construction is unsound. In our view, it would be inappropriate at this date to overrule those cases.[20]

 In light of the above-discussed cases, it is clear that the defendant Kawamura was entitled, under the Maryland Declaration of Rights, to a jury trial in the first instance. Section 4–302(d)(2)(ii) of the Courts and Judicial Proceedings

---

20. It is noteworthy that the Legislature, in passing and proposing to the electorate the constitutional amendment creating the District Court in place of justices of the peace and other courts of limited jurisdiction, did change the provision of the Declaration of Rights guaranteeing a right to jury trial in civil cases but made no change in the jury trial provisions relating to criminal cases. *See* Ch. 789 of the Acts of 1969, ratified November 3, 1970.

Article cannot be constitutionally applied to deprive a defendant charged with theft under Art. 27, § 342(f)(2), of his right to a jury trial.

While the nomenclature has changed, the offense involved in this case is in substance the same as the offense involved in *Danner*. The maximum prison term specified by the Legislature for the offense is also the same—eighteen months. While the petty larceny statute at the time of *Danner* specifically authorized punishment in the penitentiary and the present theft statute mentions no specific state institution, under Art. 27, § 690(b) and (c), such difference is immaterial. In view of § 690(b), one convicted of theft under § 342(f)(2), and sentenced to three months or more imprisonment, could be confined in the penitentiary.[21] The

---

21. Art. 27, § 690, provides in pertinent part as follows:

"(b) *Offenders to be sentenced to jurisdiction of Department instead of to institutions; assignment or transfer to institutions and facilities generally; persons sentenced prior to June 1, 1967.* —Notwithstanding any of the provisions of this article or any other law to the contrary, judges, in the sentencing of convicted persons for any offense for which the provisions of this article or any other law requires the imprisonment to be served at any one of those institutions enumerated in § 689 of this article shall in all such cases sentence such persons to the jurisdiction of the Division of Correction. All such persons shall be committed to the custody of the Commissioner of Correction and delivered to him for imprisonment. Thereafter all such persons shall be held, confined in, assigned to or transferred to such of the institutions and facilities under the jurisdiction of the Division as the Division from time to time may order, including State Police barracks where such use is convenient and practical.

"Any person sentenced prior to June 1, 1967 to any one of the institutions and facilities under the jurisdiction of the Division may, after such date, and notwithstanding such sentence, be held, confined in, assigned to or transferred to such of these institutions and facilities as the Division may from time to time order.

"(c) *Minimum period of sentence.* —No sentence by any judge to the jurisdiction of the Division may be for less than three months, any provisions of this article or any other law to the contrary notwithstanding.

"(d) *Sentence to institution to be construed to mean sentence to jurisdiction of Department.* —Whenever in this article or any other law reference is made to the sentencing or confinement of prisoners to any of the institutions enumerated in § 689, such reference

failure of the Legislature to specify the place of incarceration when it enacted the theft statute in 1978 was undoubtedly due to the fact that, under Art. 27, § 690, first enacted in 1967, all sentences to state institutions are to the Division of Correction. The Legislature's failure in 1978 to specify a state institution certainly does not indicate a change in the nature of the theft offense.[22] Furthermore, the fact that the District Judge, in this particular case, was committed to imposing a jail sentence of ninety days or less, is not constitutionally significant. In *Danner* the jail sentence was only thirty days. As previously discussed, it is the nature of the offense, and not the disposition in a particular case, which is relevant to the state constitutional jury trial right in criminal cases.

The only distinctions between petty larceny today and the offense at the time of *Danner* are the monetary amount separating petty from grand larceny and the fact that petty larceny today is classed as a misdemeanor. If the monetary amount has any significance (and it probably does not considering inflation), it would indicate that petty larceny is viewed as a greater offense today. The fact that petty larceny was a felony in 1899 was not the basis for the holding in *Danner*. Rather, as the Court made clear in *Danner, Baum,* and other cases, the state constitutional right to a jury trial attaches to many misdemeanors.

Theft, regardless of the amount involved, is and always has been regarded as an extremely serious offense in Maryland. *See, e.g., In re Application of David H.,* 283 Md. 632, 640, 392 A.2d 83 (1978). *See also In re Application of Howard C.,* 286 Md. 244, 245, 255, 407 A.2d 1124 (1979) (Smith, J., dissenting); *In re Application of Allan S.,* 282

---

shall be construed to mean sentencing or confinement to the jurisdiction of the Division rather than to any particular institution or facility of the Division."

**22.** Moreover, today the differences among the major state penal institutions, including the way they are regarded, are much less than at the time of *Danner.*

Md. 683, 693, 387 A.2d 271 (1978) (Digges, J., dissenting). At common law, a conviction for either petty larceny or grand larceny rendered a witness incompetent to testify due to the "infamous" character of the crimes. *Pendock v. Mackinder,* Willes Rep. 665, 667 (1755). *See Sylvester v. State,* 71 Ala. 17, 24–25 (1881); *Lyford v. Farrar,* 31 N.H. 314, 316 (1855); *State v. James,* 15 S.C. 233, 235–236 (1881).

Consequently, in light of the Maryland Constitution, § 4–302(d)(2)(ii) of the Courts and Judicial Proceedings Article cannot be applied to one charged with theft under Art. 27, § 342(f)(2). The defendant Kawamura was entitled to a jury trial at the initial level, and, upon his demand for a jury trial, the District Court was divested of jurisdiction.

JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IN EQUITY NO. 78080 AND MISCELLANEOUS PETITION NO. 5855 AFFIRMED. JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IN LAW NO. 60250 REVERSED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. MONTGOMERY COUNTY TO PAY COSTS.